CONLEY, J.T.C.
Plaintiffs have moved pursuant to R. 4:50 for relief from a judgment of this court dismissing their complaint. The complaint had sought correction of an alleged error in the assessment on plaintiffs’ property in Lawrence Township, Mercer County. See N.J.S.A. 54:2-41. The complaint, filed November 10, 1982, claimed that plaintiffs’ land had been overassessed in 1979,1980 and 1981 because the assessment had been based on a lot size of 6.866 acres when in fact the land consisted of only 5.226 acres. The difference in taxes was $2,785.65 for the three years. Defendant’s assessor agreed that plaintiffs’ allegations were true and defendant’s attorney consented to the form and entry of a proposed judgment which would require Lawrence Township to refund $2,785.65 to plaintiffs.
This court issued a letter opinion setting forth its reasons for the entry of a judgment dismissing the complaint. The letter provided, in part, as follows:
This court has considered the correction of error statute, N.J.S.A. 54:2-41, in Manczak v. Dover Township, 2 N.J. Tax 529 (Tax Ct.1981). In that case, both plaintiff and defendant consented to the entry of a judgment changing a local property tax assessment for specified years. The error complained of in Manezak was that the subject property had been assessed as if it had had a basement when in fact it had no basement. That factual situation is clearly analogous to that presented in the present case. Judge Rimm in Manezak held that the correction of error statute does not apply to such mistakes and that the taxpayer should have filed an appeal in the normal fashion challenging his assessment on or before August 15 of each tax year.
The court is aware that there may well be many types of errors in the underlying data upon which assessments are made throughout the State. However, there is an appeal procedure established by the Legislature for challenging such errors and for seeking changes in assessments. The correction of error statute has a very limited purpose and that is to correct errors in the nature of *100 typographical errors or clerical errors. In the present case, if the assessor’s property record card had reflected the acreage figure now agreed upon by the parties but the computation made based upon that correct figure had been in error the court would be inclined to treat this as a correction of error case. However, that is not the allegation made by this complaint.
For the reasons set forth in Manczak v. Dover Township, I cannot find that the correction of error statute is available to provide relief to the parties in the present case.
Plaintiffs’ motion for reconsideration was prompted by the decision in Sabella v. Lacey Tp., 188 N.J.Super. 500, 457 A.2d 1220 (App.Div.1983). In Sabella one part of the Appellate Division expressed criticism of the Tax Court opinion in Manczak. The Appellate Division said, in dictum:
Were it necessary to consider the point, we would probably incline toward disagreement with Manczak to the extent it suggests strict construction of the correction of errors statute, on the basis of such a procedure “denying tax revenues to the taxing districts.” 2 N.J.Tax at 534. It is likely that this particular statute, being remedial and prophylactic, should be liberally construed. ... [id at 503, 457 A.2d 1220]
Plaintiffs contend that the opinion of the Appellate Division so undermines the authority of Manczak that this court should reconsider its dismissal of plaintiffs’ complaint. According to plaintiffs, their case and Sabella involve similar circumstances since in neither case was a clerical, administrative or ministerial error made after the assessor had arrived at his assessment determination. See Manczak v. Dover Tp., supra 2 N.J.Tax at 536.
However, approximately one month prior to the decision in Sabella, a different part of the Appellate Division rendered an opinion in Bressler, et al. v. Maplewood, 190 N.J.Super. 99, 461 A.2d 1218 (App.Div.1983). The court in Bressler affirmed a Tax Court judgment, entered in reliance on Manczak, that had dismissed a correction of errors complaint filed pursuant to N.J.S.A. 54:2-41. In Bressler, as in Manczak, Sabella and the present case, the parties agreed that the plaintiffs’ property had been erroneously assessed. The assessor in Bressler had applied an incorrect frontage factor when calculating the value of an L-shaped lot. In rejecting appellants’ argument that the Tax Court judgment should be reversed, the Bressler court said:
*101 The construction urged by appellants would permit correction of assessment based on incorrect information. This would permit bypassing the normal appeal procedure and extend the appeal deadline contrary to legislative purpose, [id at 101, 461 A.2d 1218]
It is apparent that the decisions of the Appellate Division in Sabella and Bressler are in conflict. In neither case was the Supreme Court asked to review the Appellate Division decision. This presents a dilemma to the trial court which must follow and apply decisions of the Appellate Division as the law of the State until they are reversed or overruled. See State v. Rembert, 156 N.J.Super. 203, 206, 383 A.2d 747 (App.Div.1978).
This court was recently faced with a similar predicament in Seatrain Lines v. Edgewater, 4 N.J.Tax 378 (Tax Ct.1982), aff'd (App.Div.1983), rev’d on other grounds, 94 N.J. 548, 468 A.2d 197 (1983). The issue in that case was whether a taxing district could properly apply an overpayment of taxes from one year to unpaid taxes on the same parcel for subsequent years even though the taxpayer had demanded a refund of the overpayment. The two applicable decisions of the Appellate Division appeared to be inconsistent: Rothman v. River Edge, 149 N.J. Super. 435, 374 A.2d 36 (App.Div.1977), certif. den. 75 N.J. 19, 379 A.2d 250 (1977), and Newark v. Central & Lafayette Realty Co., Inc., 150 N.J.Super. 18, 374 A.2d 504 (App.Div.1977), certif. den. 75 N.J. 528, 384 A.2d 508 (1977). The court in Rothman had permitted the Borough of River Edge to set off the taxpayer’s overpayment for certain years against unpaid taxes for subsequent years, whereas the court in Newark, decided the next day by a different part of the Appellate Division, had held that the city could not do so. The Tax Court in Seatrain Lines chose to follow the Newark opinion after concluding that the relevant language in Rothman had been used inadvertently.
In affirming the Tax Court decision in Seatrain Lines a majority of the Appellate Division part that heard the appeal indicated its preference for the opinion in Newark, “not because it is later in time but because we believe it to be the better reasoned case.” Seatrain Lines v. Edgewater, supra (slip opinion at 2). On June 8, 1983 the Supreme Court summarily *102 reversed this Appellate Division determination. The Supreme Court’s order cited L.1983, c. 137 (adopted April 14,1983), which provides that municipalities may apply tax overpayments to satisfy delinquent taxes on the same property. The provision was made applicable to any case pending in any court on or after April 14,1983. Therefore, it seems reasonable to conclude that the Supreme Court’s reversal was based on the enactment of L.1983, c. 137. It would follow that the reversal should not be construed to reflect one way or the other on the validity of the Appellate Division’s statement that a court faced with conflicting Appellate Division opinions should follow what it considers to be “the better reasoned case.”
I have not found any other authority in this State on this point. Two cases which might appear similar are Robinson v. Hallberg, 107 N.J.Super. 290, 258 A.2d 142 (Ch.Div.1969), aff’d o.b. 110 N.J.Super. 364, 265 A.2d 705 (App.Div.1970), and In re Petition of Gardiner, 67 N.J.Super. 435, 170 A.2d 820 (App.Div. 1961). In each case the court was confronted with inconsistent decisions and determined to follow the more recent one. However, in each of these matters the inconsistency was between two opinions of the highest court of the State sitting en banc. Under those circumstances the determination to follow the more recent pronouncement of the highest court was reasonable. Presumably that court had considered the basis for its earlier holding and had chosen to modify or disagree with it.
The relative dates of conflicting Appellate Division opinions are not necessarily pertinent to a trial court’s determination regarding which opinion should be followed. The various parts of the Appellate Division act in large measure independently of each other and the decision of one part is not binding on any other part. Cf. State v. Market Associates, 134 N.J.Super. 282, 286, 340 A.2d 663 (App.Div.1975). Moreover, if the conflicting Appellate Division opinions were issued by different parts at approximately the same time there could be no assurance that either part considered or was even aware of the opinion of the other. In the present situation, Bressler was decided January *103 26, 1983 and Sabella was decided February 22, 1983. However, Bressler was approved for publication several months after Sabella was released and the Sabella part could not properly have cited Bressler even if it had been aware of it. R. 1:36-3.
In my opinion a trial court faced with two inconsistent decisions of the Appellate Division should follow the better reasoned decision. In so doing, the trial court should carefully set forth why it considered the decision it followed to be better reasoned than the one it did not follow.
Clear, consistent and well reasoned judicial precedent is particularly important in the field of local property taxation. There are 567 separate taxing districts and 21 county boards of taxation in New Jersey. Thousands of officials at the local, county and state levels must administer on a day-to-day basis a complicated and interrelated statutory tax assessment system. Assessments on millions of individual parcels of real property are involved. Local property taxation accounted for almost $4,500,000,000 in municipal, county and school-purpose revenues in this State in calendar year 1982. 1982 Annual Report, Division of Taxation, at 17. The State Constitution requires that the administration of the local property tax system be uniform throughout the State. N.J. Const. (1947), Art. VIII, § I, par. 1(a). In recognition of these considerations the Legislature established the Tax Court in 1979 to deal with state and local tax matters. N.J.S.A. 2A:3A-1 et seq. One of the primary responsibilities of the Tax Court is to promote uniformity in both procedural and substantive areas of the local property tax system. The accomplishment of this responsibility is aided by regular and formal discussion and coordination among all the Tax Court judges. As a consequence, when this court is faced with inconsistent opinions of the Appellate Division that could confuse those who must deal with our tax laws, this court should make every effort to resolve the dilemma in the interest of uniformity.
In my view Bressler is a better reasoned decision than Sabella with regard to the construction and application of the *104 correction of errors statute, N.J.S.A. 54:2-41. The Bressler court affirmed the judgment below based on the previous decision of this court in Manczak. In the latter case Judge Rimm carefully examined the legislative history of the correction of errors statute and the interpretation by the courts of this State of a predecessor statute and an analogous statute. He supported his conclusion with an analysis of similar statutes and the consistent construction of those statutes by courts in New York, Florida, Oregon, California and Nebraska. Judge Rimm then held, in summary, as follows:
The proper application of the correction of errors statute is to clerical, administrative or ministerial actions after the assessor has made the assessment. The purpose of the statute is to correct errors in the assessment records of a municipality once the assessor has completed his work and then ministerial, clerical or administrative errors occur in the preparation of the assessing records. This construction of N.J.S.A. 54:2-41 accomplishes uniformity and relative ease of administration. Any other construction would lead to abuses in the entire statutory appeal process and would disturb the finality of assessments which the general statutory plan for taxation seeks to accomplish. [2 N.J.Tax at 536]
The conclusions of Manczak and Bressler are well reasoned and correct. On the other hand, the decision of the Appellate Division in Sabella is based on a misreading not only of the Tax Court opinion in Manczak but also of the trial court decision in the Sabella case itself. With regard to Manczak the Sabella court said:
The fundamental error in Manczak v. Dover Tp., supra, is the holding there that the Tax Court jurisdiction in correction of errors cases depends upon compliance with “underlying statutory procedure controlling tax appeals.” [188 N.J.Super. at 502, 457 A.2d 1220]
This was not the holding of Manczak. The holding of Manczak, quoted above, had nothing to do with Tax Court jurisdiction. In fact, nowhere in Manczak is the nature of the Tax Court’s jurisdiction discussed. The sum and substance of Manczak is that the plaintiffs had failed to state a claim upon which relief could be granted pursuant to N.J.S.A. 54:2-41 and that they should have pursued their remedy to the county board of taxation on or before August 15 of each tax year pursuant to N.J.S.A. 54:3-21. Therefore, the observation of the Appellate Division in Sabella that the time limitations applicable to complaints filed under N.J.S.A. 54:3-21 are different from those *105 applicable to correction of errors matters filed under N.J.S.A. 54:2-41, while true, misses the point. One element of the analysis in Manczak is just the converse, that is, that by virtue of the very fact that the time limitations are different under the two statutes, and that the time frame of N.J.S.A. 54:2-41 is much more generous, the correction of errors statute should be strictly construed as an exception to the normal assessment review procedure.
A related problem with Sabella is that the Appellate Division’s quotation from Manczak was taken out of context. The words of Judge Rimm quoted in Sabella are an integral part of his analysis of the limited relief available under N.J.S.A. 54:2-41 as distinct from the relief more generally available under N.J.S.A. 54:3-21. In context, the quotation is as follows:
The primary consideration in dealing with the correction of errors statute is therefore the underlying statutory procedure controlling tax appeals: [text of N.J.S.A. 54:3-21 omitted] Any deviation from this appeal procedure, which is the method established by the Legislature for reviewing assessments, is analogous to an exemption and must be strictly construed. Both the correction of errors statute, when a complaint is filed by a taxpayer, and exemption statutes have the effect of denying tax revenues to taxing districts.... The correction of errors statute also has the effect of bypassing the normal procedure for challenging assessments and of extending the deadline for such challenges from August 15 of the tax year to December 31 of the third year following the tax year. Such a statutory provision must be strictly construed if it is not to do complete violence to the concept of finality of assessments requisite to the orderly financing of government. [2 N.J.Tax at 534]
It is apparent from this quotation that the Tax Court in Manczak simply did not hold, as stated in Sabella, that “the Tax Court jurisdiction in correction of errors cases depends upon compliance with ‘underlying statutory procedure controlling tax appeals.’ ” 188 N.J.Super. at 502, 457 A.2d 1220.
It is also apparent that the Appellate Division in Sabella misconstrued the trial court holding below in that case. The Appellate Division said that the Tax Court had found an absence of jurisdiction to entertain the correction of errors application. However, in the portion of the trial court’s decision from the bench, as quoted in Sabella, the court clearly stated that “... this is not an error correctable under Manczak....” Ibid Thus, the trial court in Sabella held that the plaintiffs had no *106 cause of action pursuant to N.J.S.A. 54:2-41. This was not a finding of lack of jurisdiction. At a later point in its decision, in order to deal with all outstanding issues, the trial court recited that the plaintiffs had “apparently” filed an appeal to the county board of taxation pursuant to N.J.S.A. 54:3-21 and that the county board had refused to hear the appeal because it had been filed after the August 15 statutory deadline. In this context the trial court observed: “Therefore, the Ocean County Board of Taxation does not have jurisdiction over this matter, and I do not have jurisdiction over it as well.” Ibid. The obvious intent of this statement was that the Tax Court had no jurisdiction over the matter as a regular appeal from a county tax board judgment pursuant to N.J.S.A. 54:2-39 because plaintiffs’ complaint, even if viewed in that light, had not been filed in a timely fashion with either the county tax board or the Tax Court. Jackson Tp. v. Marsyll of B.B. Inc., 3 N.J.Tax 386, 390-391 (Tax 0.1881).
The Appellate Division’s opinion in Sabella may have been influenced by the unfortunate circumstances of that case. Both parties in Sabella agreed that an error had been made in the taxpayers’ assessment. A frontage figure of 580 feet had been used when 58.0 feet should have been used. The resulting assessment of $182,800 should have been only $40,800. The Appellate Division used subjective language to characterize the situation:
This is an appeal by beleaguered taxpayers from a determination which, if left undisturbed, would undoubtedly represent the ultimate in the exalting of procedural technicality at the expense of substantial justice.
... Simply put, on account of the conceded failure of the re-evaluation company to insert a decimal point, the taxpayers were assessed over four times (448%) that which should have been the proper assessment. Despite the fact that the municipality joined in the application to correct this obvious error, the judge of the Tax Court ... ordered the entry of a judgment imposing a tax liability which, all concerned agree, is far in excess of that which it probably should be. [188 N.J.Super. at 501, 457 A.2d 1220]
The Tax Court is not insensitive to the result it reached in Sabella in which it found that it could not change an assessment that the parties agreed should have been different. Nor is this court insensitive to similar results in other instances, such as the *107 present case, in which it has denied relief sought pursuant to the correction of errors statute. In a large number of these cases the taxing district has conceded that an error was made in the assessment process. In many cases the error has been of considerable magnitude. However, in a system which must deal uniformly with well over 2,000,000 assessments each year there is a need to adhere to the regular review process established by the Legislature. If litigants could avoid this procedure in every case the system would break down.
In recognition of this potential problem the Legislature tightened the correction of errors statute with the adoption of L.1979, c. 44. This amendment limited the time within which a correction of errors application could be filed and attempted to define the types of errors which could be corrected by this means. It also required that county boards of taxation be served with the application and gave county boards standing to object to the correction of any alleged error pursuant to N.J.S.A. 54:2—41. These provisions were apparently adopted at the urging of the county boards of taxation which were concerned about a trend toward giving more and more cases treatment beyond that regularly available in the appeal process established in N.J.S.A. 54:3-21.
It should perhaps be stressed at this point that the Legislature has made the normal appeal process readily available to all taxpayers. Any taxpayer or taxing district feeling aggrieved by a local property tax assessment of $750,000 or less may have the assessment reviewed promptly and without a great deal of formality by filing a petition with the county board of taxation on or before August 15 of the tax year. N.J.S.A. 54:3-21. There was no suggestion in the present case, nor was there any in Manezak, Sabella or Bressler, that the taxpayers had been unable to exercise this simple remedy, or that the assessment error they sought to correct pursuant to N.J.S.A. 54:2-41 was in any way different from errors routinely corrected by county boards of taxation during the normal appeal process.
*108 The Appellate Division opinion in Sabella is contrary to the construction of N.J.S.A. 54:2-41 required by its legislative history and by judicial determinations in this as well as in other states. The Sabella court, without explanation, simply said: “It is likely that this particular statute, being remedial and prophylactic, should be liberally construed.” 188 N.J.Super. at 503, 457 A.2d 1220. There is no basis for such a conclusion. Moreover, if the Sabella approach were followed by this court, the extraordinary remedy of N.J.S.A. 54:2-41 might quickly become a standard method of review for any taxpayer who could find a factual error on his property record card even several years after his normal appeal time has expired. This potential for abuse as well as for revenue shortfalls in all the taxing districts of New Jersey is self-evident and should be avoided.
The more restrictive construction of N.J.S.A. 54:2-41 by the courts in Bressler and Manczak is consistent with the legislative scheme for the orderly resolution of tax assessment disputes and should be followed. Since Bressler is a better reasoned opinion than Sabella I will rely on Bressler as precedent with regard to the proper construction of N.J.S.A. 54:2-41. Because plaintiffs’ motion for reconsideration in this matter was made in reliance on Sabella, the motion is denied.