276 N.J. Super. 289 (1994)
647 A.2d 1348
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
OMELIO SAAVEDRA, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 13, 1994.
Decided September 30, 1994.
*290 Before Judges PRESSLER, LANDAU and NEWMAN.
Joseph T. Afflitto, Jr. argued the cause for appellant (Diamond, Afflitto & Raimondi, attorneys, Mr. Afflitto, Jr. on the letter brief).
Terry Bogorad, Assistant Prosecutor, argued the cause for respondent (Ronald S. Fava, Passaic County Prosecutor, Ms. Bogorad, Assistant Prosecutor, of counsel and on the letter brief).
The opinion of the court was delivered by NEWMAN, J.S.C. (temporarily assigned).
This is an appeal on leave granted from an order denying the defendant Omelio Saavedra's motion to dismiss the notice filed by the Passaic County Prosecutor pursuant to N.J.S.A. 2C:25-21d(3) to forfeit a seized 9 MM Berretta arising out of a domestic violence complaint. The issue of first impression raised is whether the prosecutor's petition to obtain title to the seized weapon, even though not filed within 45 days of the seizure, can nonetheless be viewed as timely under the forementioned statutory provision. We conclude that it was and therefore affirm.
*291 The pertinent facts are as follows. On July 23, 1993, Victoria Saavedra, who was in the midst of a divorce action, filed a domestic violence complaint against her husband, Omelio Saavedra, the defendant. The complaint alleged, among other things, that the defendant told his father-in-law that he was thinking about shooting his four year old son, his wife and himself. No prior history of violence was reported in the complaint. A temporary restraining order was issued by the North Haledon Municipal Court on the same day and a seizure of the defendant's handgun was directed. A 9 MM Berretta was seized by the local police on the evening of July 23, 1993 from the Saavedra household.
On July 27, 1993, a hearing was conducted by the Family Part on the domestic violence complaint. In addition to issuing a restraining order, the judge directed: "Weapon already confiscated to remain in custody of North Haledon Police." The wife signed a contempt complaint on November 8, 1993, in which she alleged that the defendant violated the restraining order. On December 20, 1993, the Passaic County Prosecutor filed a motion styled Forfeiture/Disposal of Weapons and Revocation of Authorization for Said Weapons Under the Prevention of Domestic Violence Act. The motion was filed within 45 days of the time when the county prosecutor learned of the weapon seizure, but 150 days after the weapon had been initially seized by the local police.
The defendant moved to dismiss the prosecutor's forfeiture motion on the ground that it was not filed within 45 days of the seizure. The prosecutor opposed the motion. The motion judge, Judge Clark, denied the motion to dismiss the prosecutor's forfeiture application, finding extenuating circumstances warranting extension of the filing deadline.
The Prevention of Domestic Violence Act of 1991, N.J.S.A. 2C:25-17 et seq., was the strong legislative response to what was perceived as a problem requiring more appropriate and expeditious address by all levels of law enforcement as well as the court system. In a statement of legislative findings directly incorporated into the body of the Act itself, the Legislature had this to say:

*292 The Legislature finds and declares that domestic violence is a serious crime against society; that there are thousands of persons in this State who are regularly beaten, tortured and in some cases even killed by their spouses or cohabitants; that a significant number of women who are assaulted are pregnant; that victims of domestic violence come from all social and economic backgrounds and ethnic groups; that there is a positive correlation between spousal abuse and child abuse; and that children, even when they are not themselves physically assaulted, suffer deep and lasting emotional effects from exposure to domestic violence. It is therefore, the intent of the Legislature to assure the victims of domestic violence the maximum protection from abuse the law can provide. N.J.S.A. 2C:25-18.
In singling out law enforcement and the courts, the Legislature made the following pronouncement:
The Legislature further finds and declares that even though many of the existing criminal statutes are applicable to acts of domestic violence, previous societal attitudes concerning domestic violence have affected the response of our law enforcement and judicial systems, resulting in these acts receiving different treatment from similar crimes when they occur in a domestic context. The Legislature finds that battered adults presently experience substantial difficulty in gaining access to protection from the judicial system, particularly due to that system's inability to generate a prompt response in an emergency situation. N.J.S.A. 2C:25-18.
Needless to say, there is no necessity to search further into the legislative history of this Act when the Legislature has been so explicit and focused on exactly what needs to be attended to when violence erupts in a family or family-like setting. Protection of the victim was the clear and unequivocal message. Law enforcement personnel and the courts were encouraged to insure, indeed charged with insuring, the safety of all victims exposed to actual or potential acts of domestic violence or abuse. It is against this finished canvas by the Legislature that the issue of the timeliness of the prosecutor's forfeiture application has to be considered.
There is no question that the weapon was seized by the North Haledon police pursuant to the authority of N.J.S.A. 2C:25-21d(1)(b). That section permits a law enforcement officer who has probable cause to believe that an act of domestic violence has been committed "... to seize any weapon that the officer reasonably believes would expose the victim to a risk of serious bodily injury." Here, the officers knew that the husband had allegedly threatened to shoot his son, his wife and himself. Clearly, they had sufficient *293 justification to seize the 9 MM Berretta handgun from the Saavedra household.
For whatever reason, the local police then failed to follow the clear and unambiguous statutory direction as to the transmittal of the weapon. The failure of delivery was compounded by the court's domestic violence order which directed that the confiscated weapon remain in the custody of the North Haledon police. At this juncture, the police would be in violation of the court order if the weapon were delivered to the prosecutor. By the same token, the court had ordered a retention of the weapon in the hands of the local police in violation of a clear statutory directive.
Indeed, the unambiguous language of the seized weapon delivery provision leaves no room for interpretation. N.J.S.A. 2C:25-21d(2) mandates the following:
A law enforcement officer shall deliver all weapons seized pursuant to this section to the county prosecutor and shall append an inventory of all seized weapons to the domestic violence report.
The statutory command is without equivocation.
The delivery of the seized weapon to the prosecutor takes on special significance in light of the operation of the forfeiture provision embodied in N.J.S.A. 2C:25-21d(3).[1] The timetable imposed on the prosecutor for filing a petition to obtain title to the weapon runs from the date of the seizure, but the running of the time presupposes that the prosecutor has possession of the seized weapon. When the weapon has not been delivered to the prosecutor, *294 as here, the prosecutor lacks knowledge of the seizure and is obviously in no position to decide whether or not to pursue a forfeiture.
The breach of the statutory directive of delivery of the seized weapon to the prosecutor was unfortunate. However, we do not believe that the obvious and well-etched legislative design should be impaired and frustrated by said breach. As so often quoted when interpreting statutory language:
"A statute should not be given an arbitrary construction, according to the strict letter, but rather one that will advance the sense and meaning fairly deducible from the context. The reason of the statute prevails over the literal sense of terms; the obvious policy is an implied limitation on the sense of general terms, and a touchstone for the expansion of narrower terms." Wene v. Meyner, 13 N.J. 185, 197, 98 A.2d 573 (1953).
The motive which led to the enactment of the law is one of the most certain ways of establishing its true meaning. Fischer v. Fischer, 13 N.J. 162, 168, 98 A.2d 568 (1953). It would truly run counter to the statutory purpose if a weapon were returned to an offending spouse or other person after 45 days in the context of an unresolved domestic violence complaint because the seized weapon was not delivered to the county prosecutor in the first place.
The statutory provision should be read as to achieve what the Legislature clearly contemplated; namely, that the prosecutor would be in timely possession of the weapon or have knowledge of the seizure in order to arrive at an informed decision as to the course of action to pursue within the 45-day time frame. For that reason, we do not hesitate to hold that the 45 days within which the prosecutor may petition a judge of the Family Part of the Superior Court to forfeit the seized weapon did not begin to run until the prosecutor came into possession of the weapon or, as in this case, had knowledge of its seizure. Utilizing the date of November 8, 1993 as the date the prosecutor learned of the weapon seizure, the petition filed with the court on December 20, 1993 was timely filed.
Requiring the delivery of the seized weapon to the county prosecutor is not a legislative accident. As the chief law enforcement *295 official in the county under the authority of N.J.S.A. 2A:158-1 et seq., the prosecutor is in the best position to assure evenhanded approaches to the disposition of seized weapons and to present consistent positions to the court in the summary hearings held in connection with forfeitures. N.J.S.A. 2C:25-21d(3). It would not be surprising to find, for example, that in the zealous enforcement of this Act, there will be weapons seized out of a heightened sense of caution, erring on the side of safety rather than running the risk of being sorry. Again, the prosecutor, through a trained staff, would be able to recognize and discern these situations and deal with them in a responsible way, never however losing sight of the primary objective of the act  protection of the victim. See, N.J.S.A. 2C:25-20. (mandatory training in the handling, investigation and response to domestic violence complaints).
The centralization of all seized weapons where an act of domestic violence has been or is likely to be committed has been legislatively reposed in the various county prosecutors. Local law enforcement personnel and the courts are bound to follow and uphold the statutory procedure. We do not expect that what occurred here will be repeated in the future.
For the reasons expressed, we are satisfied that the prosecutor's petition was timely filed within 45 days after he learned of the seizure by the local police. The trial judge's denial of the motion to dismiss the prosecutor's petition was proper. Accordingly, the order denying the dismissal motion is affirmed. The matter shall proceed to hearing on the merits of the application without delay.
NOTES
[1] N.J.S.A. 2C:25-21d(3) reads in pertinent part: Weapons seized in accordance with the above shall be returned to the owner except upon order of the Superior Court. The prosecutor who has possession of the seized weapons may, upon notice to the owner, petition a judge of the Family Part of the Superior Court, Chancery Division, within 45 days of seizure, to obtain title to the seized weapons, or to revoke any and all permits, licenses and other authorizations for the use, possession, or ownership of such weapons pursuant to the law governing such use, possession, or ownership or may object to the return of the weapons on such grounds as are provided for the initial rejection or later revocation of the authorizations, or on the grounds that the owner is unfit or that the owner poses a threat to the public in general or a person or persons in particular.